**Norman JAEGER, Deceased, Employee,**

**v.**

**3M COMPANY and Travelers Insurance Company, Relators,**

**3M Company and Northwestern National Insurance Company, 3M Company and Insurance Company of North America, 3M Company and Commercial Union Insurance Company, Respondents,**

**and**

**Equitable Life Assurance Society of the United States, et al., Intervenors.**

No. C2–86–501.

Supreme Court of Minnesota.

Sept. 26, 1986.

Joseph J. Grill, Minneapolis, for Travelers Ins. Co.

Mark A. Fonken, St. Paul, for Northwestern Nat. Ins. Co.

SIMONETT, Justice.

This is a dispute between two workers' compensation insurers of a single employer over which is liable for compensation for the death of an employee due to an occupational disease. Relator claims the Workers' Compensation Court of Appeals erred in substituting its own finding of fact for that of the compensation judge and in re-

fusing to apply the "bright line" rule of *Flowers v. Consolidated Container Corp.*, 336 N.W.2d 255 (Minn.1983). We affirm in part, reverse in part, and remand.

Employee Norman Jaeger died of respiratory disease on May 30, 1982, about a year after his retirement from 40 years of work in 3M Company's adhesive manufacturing department. His widow brought a compensation claim against 3M and its several insurers on the risk. Northwestern National, the last insurer, settled the claim, and then brought this proceeding for contribution or reimbursement from the prior insurers.

The parties stipulated the date of the employee's death, May 30, 1982, as the date of injury, apparently because the employee did not lose time from work from the lung disease. The parties also stipulated 3M had the following insurance coverages:

| | |
|---|---|
| 1939 to Jan. 1, 1954 | Commercial Union Insurance Company |
| Jan. 1, 1954 to Dec. 31, 1965 | Insurance Company of North America |
| Jan. 1, 1966 to Jan. 1, 1978 | Travelers Insurance Company |
| Jan. 1, 1978 to May 1, 1982 | Northwestern National Insurance Company |

The compensation judge ruled that the claims against Commercial Union and INA were barred by the statute of limitations. He then found employee Jaeger had been exposed to talc and asbestos between January 1, 1966, and December 31, 1977, when Travelers was the insurer, but that Jaeger did not then sustain any personal injury or occupational disease. The judge further found Jaeger was exposed to talc and asbestos from January 1, 1978, to his retirement, the period when Northwestern National was on the risk, and that this exposure substantially contributed to the employee's lung disease which resulted in his injury and death on May 30, 1982. Applying the "bright line" *Flowers* rule, the judge ruled Northwestern National alone was liable and denied its claim for reimbursement or contribution.

Northwestern National appealed to the Workers' Compensation Court of Appeals. The WCCA disagreed with the compensation judge's findings on the employee's exposure to talc or asbestos, and substituted its own findings, namely, that (1) Jaeger had not been substantially exposed to talc or asbestos after January 1, 1978, when Northwestern National was on the risk; but (2) Jaeger had been so exposed between July 1, 1973, and December 31, 1977, when Travelers was on the risk; and (3) Jaeger had incurred personal injury or occupational disease on May 20, 1982, which was substantially contributed to by the exposure when Travelers was on the risk. Travelers was ordered to reimburse Northwestern National. The WCCA ruled the "bright line" rule was not applicable.

Travelers, by certiorari, comes here, with two issues: (1) Was the compensation judge's finding of employment exposure to talc or asbestos after January 1, 1978, as a substantial contributing cause of the employee's lung disease, supported by substantial evidence? (2) Does the bright line rule apply?

■ 1. From our review of the record, we conclude the WCCA did not err in setting aside the compensation judge's finding on exposure. While there is evidence the employee had some exposure to talc dust between January 1, 1978, and May 1, 1981, we agree with the WCCA that reasonable minds would not find the evidence adequate to support a finding this exposure was substantial. Neither is there evidence which would lead reasonable minds to conclude that such exposure as there was substantially contributed to the employee's disease and death. *See Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54 (Minn. 1984).

■ 2. Nevertheless, it would seem from the evidence the employee had some exposure, even if not substantial, to talc dust between January 1, 1978, and May 1, 1981, even though the WCCA made no such finding, at least not explicitly. If so, might the bright line rule of *Flowers v. Consolidated Container Corp.*, *supra*, apply? The WCCA thought not.

In *Flowers* we adopted the rule that if an employee sustains an occupational disease in the course of employment for a single employer, the insurer on the risk when the employee sustains disability is responsible for compensation. In *Radermecher v. FMC Corp.*, 375 N.W.2d 809 (Minn.1985), we added a clarification, stating that "liability is on the last insurer on the risk at a time when the employment is of the kind that contributes to the disease." And we added, "This causal connection need not be substantial or significant." *Id.* at 813.

*Flowers* was filed July 15, 1983, and made no reference to an amendment, now Minn.Stat. § 176.66, subd. 10, which became effective October 1, 1983, providing that the insurer "during the employee's last significant exposure to the hazard of the occupational disease is the liable party." In *Radermecher*, we added a footnote observing, "While this bright line rule applies to this case, it has a limited life, governing only cases from July 15, 1983, the date of the *Flowers* decision, to October 1, 1983, when Minn.Stat. § 176.66, subd. 10, enacted by the 1983 legislature, became effective." *Id.* at 813 n. 2. Reading this footnote, the WCCA refused to apply the bright line rule, believing the rule applied only in decisions issued between July 15, 1983, and October 1, 1983. The footnote's reference to the "limited life" of the bright line rule is perhaps unclear. The reference was intended merely as a recognition that the bright line rule had not been announced until July 15, 1983, and that it would be inapplicable to claims based on occupational diseases resulting in disablement after October 1, 1983. In fact, we applied the bright line rule in *Radermecher*, and stated we were doing so, even though the decision of the compensation judge and the WCCA were issued after October 1, 1983. So there may be no misunderstanding, we hold that both the *Flowers'* bright line rule and the 1983 amendment are substantive in character. In other words, the bright line rule remains applicable to claims based on an occupational disease resulting in disablement before October 1, 1983, in the employment of one

employer with multiple insurers. For claims based on occupational disease resulting in disablement on and after October 1, 1983, the 1983 amendment, not the bright line rule, applies.

We reverse the WCCA's ruling that the bright line rule is not applicable to this case and remand so the WCCA may make a finding about whether after January 1, 1978, there was any exposure to talc dust and any causal connection between any exposure and the employee's disease and death which meets the bright line test of *Flowers*. Neither the exposure nor the causal connection, we repeat, need be significant under the bright line rule.

Affirmed in part, reversed in part, and remanded.